**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| UNITED STATES f/u/b/o MAVERICK CONSTRUCTION MANAGEMENT SERVICES, INC., | ) | |
| Plaintiff, | ) | Docket no. 2:12-cv-023-NT |
| v. | ) | |
| CONSIGLI CONSTRUCTION CO., INC. and FEDERAL INSURANCE COMPANY, | ) | |
| Defendants. | ) | |

**ORDER ON DEFENDANTS' MOTION TO STAY AND COMPEL ARBITRATION**

Defendants Consigli Construction Co. ("**Consigli**") and Federal Insurance Company ("**FIC**") move to stay the suit of Plaintiff Maverick Construction Management Services, Inc. ("**Maverick**") for payment under the Miller Act, 40 U.S.C.A. § 3131 – 3134,[1] and to compel arbitration pursuant to the parties' contract. For the reasons that follow, the Defendants' motion to stay and compel arbitration is **GRANTED**.

## I. Factual Background

Maverick alleges that in September of 2010 it entered into a subcontract with general contractor Consigli in which Maverick agreed to perform certain construction work at the Portsmouth Naval Shipyard (the "**Subcontract**"). Although the Subcontract price originally totaled $1,192,455, Maverick claims that

[1] The Miller Act provides a means of recovery for subcontractors who provide materials and/or labor on federal properties. Because federal buildings are not subject to mechanic's liens, the Miller Act requires general contractors to furnish payment bonds and allows unpaid subcontractors to sue general contractors in federal court to obtain payment through such bonds.

site conditions and delays[2] that were outside of Maverick's control resulted in a cost overrun of $1,964,924.[3] On September 6, 2011, Consigli terminated the Subcontract "for convenience," pursuant to Article 16 of the Subcontract. Maverick was paid $571,758. Maverick does not contest Consigli's convenience termination, but it has sued Consigli and its surety, FIC, to recover the $1,964,924 it claims it is due under the terms of the Subcontract.

The Defendants have moved to stay this litigation and compel arbitration pursuant to Article 17 of the contract, (the "**Arbitration Clause**"), which provides:

> A. [Maverick] agrees to strictly adhere to the requirements of any provisions in the General Contract Documents[4] relating to notice, submission, processing, and resolution of claims or disputes. Any and all claims or disputes arising out of or relating to this Agreement or breach thereof shall be decided, at the sole discretion of [Consigli], either by submission to (1) arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association or (2) judicial decision by the Superior Court in the State of Maine; provided, however, the determination by the Owner, the Engineer, or any Court, Board of Arbitration, or other tribunal pursuant to the provisions of the General Contract Documents with respect to any dispute or claim relating to this Subcontract or the Work performed or to be performed hereunder shall be binding upon [Maverick], and [Maverick] agrees to accept such determination, provided [Maverick] shall have been given reasonable notice of such dispute, proceeding, or litigation and opportunity to defend or present claims. At the sole discretion of [Consigli], any arbitration with [Maverick] shall be consolidated with any other arbitration proceeding relating to the work under the General Contract. The parties agree to waive their rights to

[2] Maverick submits correspondence between the parties that suggests that the great bulk of the costs claimed by Maverick were related to the per-diem cost of equipment brought onto the site by Maverick, which sat unused for some time while issues with the project were worked out.

[3] Maverick claims that the work it did under the contract cost $2,536,682 and that it was paid only $571,758.

[4] The General Contract Documents apparently refer to the contract between Consigli and the U.S. Navy. The parties have not provided these documents to the Court.

> trial by jury since the subject matter of such disputes would, in most instances, be too complex for presentation to a jury and would best be served by a jury-waived proceeding.
>
> B. The parties further agree that, at [Consigli's] discretion, as a condition precedent to instituting legal action against each other or their sureties, they shall participate in non-binding mediation pursuant to the Mediation rules of the American Arbitration Association.

Subcontract, p. 5 of 29 (Doc. # 14-1).

The Plaintiff counters that the Arbitration Clause is unenforceable because it is illusory and unsupported by adequate consideration. Next the Plaintiff argues that because Consigli takes the position that cost overruns relating to equipment rates must be decided by the U.S. Navy, those disputes fall outside the scope of the Arbitration Clause. Finally, the Plaintiff argues that Consigli's surety, FIC, has not agreed to be bound by any decision of the arbitrator, and thus litigation against FIC should not be stayed.

## II. Legal Standard

The parties agree that the Arbitration Clause is governed by the Federal Arbitration Act ("**FAA**"), 9 U.S.C. §§ 1 – 16. Federal courts will grant a motion to stay a case and compel arbitration pursuant to the FAA when "(i) there exists a written agreement to arbitrate, (ii) the dispute in question falls within the scope of that arbitration agreement, and (iii) the party seeking an arbitral forum has not waived its right to arbitration." *Combined Energies v. CCI, Inc.*, 514 F.3d 168, 171 (1st Cir. 2008) (quoting *Bangor Hydro-Elec. Co. v. New England Tel. & Tel. Co.,* 62 F. Supp. 2d 152, 155 (D.Me.1999)).

The First Circuit has conveniently set forth several basic arbitration principles that have been developed by the Supreme Court. *Municipality of San Juan v. Corporación para el Fomento Económico de la Ciudad Capital*, 415 F.3d 145, 149 (1st Cir. 2005).

> First, "'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 648, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986). Second, "the question of arbitrability . . . is undeniably an issue for judicial determination." *Id.* at 649. Third, a court deciding whether the parties have agreed to submit a particular grievance to arbitration is "not to rule on the potential merits of the underlying claims." *Id.* And, finally, when a contract contains an arbitration clause, "'[d]oubts should be resolved in favor of coverage.'" *Id.* at 650 (citation omitted); *see also, e.g.*, *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944-45, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995).

*Id.*

An arbitration clause, like the one at issue, which defines its scope to include "[a]ll claims, disputes and other matters in questions arising out of, or relating to, this Agreement or the breach thereof" is "facially broad in scope." *Winterwood Farm, LLC v. JER, Inc.,* 327 F. Supp. 2d 34, 39 (D. Me. 2004). "The existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *MSAD No. 68 v. Johnson Controls, Inc.*, 222 F. Supp. 2d 50, 55 (D. Me. 2002) (quoting *Smith/Enron Cogeneration Ltd. P'ship. v. Smith Cogeneration Int'l, Inc.,* 198 F.3d 88, 99 (2nd Cir. 1999), *cert. denied,* 531 U.S. 815, 121 S. Ct. 51, 148 L. Ed. 2d 20 (2000) (citing *WorldCrisa Corp. v. Armstrong,* 129 F.3d 71, 74 (2nd Cir.1997)).

Under Section 2 of the FAA, a written provision to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2. "One important constraint is that the federal policy favoring arbitration does not totally displace ordinary rules of contract interpretation." *Kristian v. Comcast Corp.*, 446 F.3d 25, 35 (1st Cir. 2006). Thus, when the parties' argument regarding arbitrability turns not on whether their underlying dispute is covered by the arbitration clause ("scope questions") but rather on whether the arbitration agreement itself is revocable at law or in equity, the federal presumption favoring arbitrability is set aside, and ordinary rules of contract construction apply. *See id.* (citing *Paul Revere Variable Annuity Ins. Co. v. Kirschhofer*, 226 F.3d 15, 25 (1st Cir. 2000)).

## III. Discussion

A. Whether Grounds Exist at Law or in Equity for Revocation

Maverick claims that the Arbitration Clause is unenforceable because it is illusory. Specifically, Maverick argues that: (1) the arbitration clause does not bind Consigli to the results of arbitration; (2) the arbitration clause allows Consigli alone to switch to the State courts at any stage of the arbitration; and (3) the unilateral nature of the arbitration clause makes it unenforceable for lack of mutuality or consideration. Since Maverick's illusoriness arguments challenge the validity of the arbitration agreement and not its scope, the Court applies ordinary rules of contract construction under applicable state law. *See Kristian v. Comcast Corp.*, 446 F.3d at 35. Maine state law governs the parties' contract in this case.

With respect to Maverick's first argument, the Arbitration Clause incorporates by reference the AAA arbitration rules for the construction industry. These rules state that parties who submit to arbitration must consent to entry of judgment upon the arbitration award in any federal or state court having jurisdiction of the matter. *See* AAA Construction Industry Arbitration Rule 51(c). Even though Consigli has the option to choose arbitration under the contract, in so choosing, it submits to the binding effects of such arbitration. Accordingly, Consigli will be bound by the results of arbitration.

Second, Maverick argues that Consigli may elect to arbitrate but may change its mind at any time after an election to arbitrate and bring the case to State court.[5] Maverick's concern regarding the ability of Consigli to change its mind at any time is not borne out by the language of the Arbitration Clause. Unlike the case of *Stevens/Leinweber/Sullens, Inc. v. Holm Dev. and Mgmt., Inc.*, 795 P.2d 1308, 1313 (Ariz. 1990),[6] cited by Maverick, there is no language in the Arbitration Clause that gives Consigli the option to change its mind after electing either arbitration or litigation. The plain language of the clause requires Consigli to choose either arbitration or litigation. Consigli retains no contractual right to change its mind.

---

5 Consigli has filed a timely motion to compel arbitration, so the Plaintiff has no argument that it has or will be prejudiced by a delayed demand for arbitration. *See Hardypond Constr. v. R&G, Inc.*, No. Civ. A. CV-03-418, 2003 WL 23109920, *2, (Me. Super. Ct., Nov. 7, 2003) (under Maine law, party seeking to compel arbitration waives right to arbitrate if it has taken action inconsistent with present insistence on contractual right to arbitration and opponent has been prejudiced.)

6 *Holm Development* involved the development of a shopping center. Under the arbitration clause at issue, Holm Development, the owner of the project, had the option of submitting any dispute to arbitration or filing a lawsuit. Holm Development also reserved the right to change its mind and make a "further election . . . at any time, prior to a final judgment in the ongoing proceeding." *Holm Development*, 795 P.2d at 1310.

Maverick's third illusoriness argument relates to the fact that the Arbitration Clause is unilateral, *i.e.* one in which Consigli alone has the option to choose litigation or arbitration and in which Maverick is required to submit to Consigli's election. Maine law has not yet definitively addressed the validity of unilateral arbitration clauses. Such clauses are viewed by some courts with disfavor. *See e.g. DiMercurio v. Sphere Drake Ins.*, 202 F.3d 71, 81 (1st Cir. 2000) ("We adhere to our view that one-sided agreements to arbitrate are not favored.") Despite this, however, the Court thinks it unlikely that Maine will hold that such clauses are generally void for lack of mutuality or consideration.

The Plaintiff cites *Snow v. BE & K Constr., Co.,* 126 F. Supp. 2d 5, 15 (D. Me. 2001)[7] for the proposition that "'an illusory promise is not consideration,'" and relies on *Millien v. Colby College*, 874 A.2d 397, 402 (2005),[8] for the proposition that a "purported promise to arbitrate that does not actually require binding arbitration is

---

7 *Snow* involved an employee who was suing her former employer for sexual harassment. The employer sought to compel arbitration based on a provision contained in an Employee Solution Program booklet which required arbitration of employment disputes. The defendant argued that the booklet constituted a contract and that the plaintiff accepted the terms of the contract by continuing to work for the company. The booklet also contained a clause which stated:

> This document in no way effects [sic] any other terms or the nature of your employment, and it is in not an employment agreement. The Company reserves the right to modify or discontinue this program at any time.

*Id*. at 13. Because the Company could unilaterally discontinue the Employee Solution Program at any time, its promise was illusory, and it therefore could not constitute consideration. *Id*. 14-16.

8 *Millien* did not involve an arbitration clause at all. Millien was a student at Colby College who was accused of sexual assault of another student. The Dean's Hearing Board exonerated Millien, but that decision was overturned by an Appeals Board. Millien argued that because the Student Handbook did not contemplate an appeal from the Dean's Hearing Board to the Appeals Board, Colby breached its agreement with Millien by allowing the appeal. The Law Court, looking at a provision in the Student Handbook which reserved to Colby the right to make any changes at any time to the handbook without prior notice, found that the student handbook was not a binding contract or the exclusive source of the terms of the parties' agreement.

illusory under Maine law." (Plaintiff's Opposition at 8). But both *Snow* and *Millien* involved handbooks containing clauses that reserved the right to change the handbooks' terms unilaterally and without notice. It was because of these reservation clauses that the courts found that the handbooks did not constitute enforceable contracts. Unlike the handbooks in *Snow* and *Millien*, the Subcontract contains no clause that would allow Consigli to change or modify the Subcontract unilaterally and without notice.

Maverick also relies on *Holm Development*, a case decided under Arizona law. This case held that an arbitration clause had to be separated from the rest of the contract, and mutuality of obligation of the arbitration clause, *i.e.* a requirement that both parties be bound to arbitrate in the same manner, was necessary. *Holm Development*, 795 P.2d at 1312. Without mutuality, the *Holm Development* court concluded, the clause lacked consideration and was not enforceable. *Id.* at 1313.

The separability concept discussed in *Holm Development* had its genesis in *Prima Paint Corp. v. Flood and Conklin Mfg. Co.,* 388 U.S. 395, 404, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967). In *Prima Paint*, the Supreme Court approved of the isolation of the arbitration clause in order to save the clause from an otherwise voidable contract.[9] The Supreme Court was explicit that its holding was supported

[9] In *Prima Paint*, the plaintiff sued the defendant for breaching the parties' purchase-and-sale and consulting agreements. *Prima Paint*, 388 U.S. at 397-98. The defendant invoked the arbitration clause contained in the agreements, but Prima Paint asserted that it could not be compelled to arbitrate because it had been fraudulently induced to enter the contracts which were therefore voidable. *Id.* at 398. The Supreme Court disagreed, finding that the language of Section 4 of the FAA restricted the Court's role to review of the validity of the "arbitration agreement" itself. *Id.* at 403. It then held that an arbitration clause will be enforced unless the objecting party could demonstrate that there was fraud in the inducement of the arbitration clause itself. *Id.* at 404.

not only by the language of the FAA, but also by the FAA's purpose to ensure arbitration without "delay and obstruction in the courts." *Prima Paint*, 388 U.S. at 404. The Supreme Court recently relied on *Prima Paint* to compel arbitration in *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010).[10] The separability doctrine as developed in *Prima Paint* and *Rent-A-Center* requires arbitration unless the objecting party can demonstrate that the arbitration clause itself was either fraudulently induced or unconscionable. *Prima Paint*, 388 U.S. at 403-04, *Rent-A-Center*, 130 S.Ct. at 2780-81. It does not require that an arbitration clause be isolated and subjected to a mutuality test.[11]

*Holm Development*, perhaps mindful of the pro-arbitration purpose articulated in *Prima Paint*, pointed out that the unilateral arbitration clause in the case before it did "not promote the public policy favoring arbitration." *Holm Development,* 705 P.2d at 1313. The court in *Holm Development* may have been

---

[10] In *Rent-A-Center*, a former employee's § 1981 claims were referred to arbitration in spite of his claim that the arbitration agreement he had signed was unconscionable and therefore unenforceable. *Rent-A-Center*, 130 S.Ct. at 2775. The Supreme Court separated a provision that delegated the question of whether the parties' arbitration agreement was valid to the arbitrator. *Id.* at 2780. The Court found this to be an arbitration agreement within the arbitration agreement, and would not let the plaintiff-employee escape arbitration unless he disputed the validity of the delegation provision itself, which he had not done. *Id.* at 2779-81.

[11] As one commentator has pointed out:

> The circumstances that one of the provisions in an integrated agreement grants certain rights to only one of the parties does not in other instances render that provision ineffective for lack of consideration or mutuality, as long as appropriate consideration can be found in other provisions of the agreement or elsewhere. There appears to be no good reason for deviating from this rule merely because an arbitration, rather than some other, clause is involved.

Hans Smit, *The Unilateral Arbitration Clause: A Comparative Analysis*, 20 Am. Rev. Int'l Arb. 391, 401 (2009). *See also,* Christopher R. Drahozal, *Nonmutual Agreements to Arbitrate*, 27 J. Corp. L. 537, 538-39 (2002).

motivated by the portion of the arbitration clause that allowed the defendant to change its mind and switch to or from arbitration at any time prior to final judgment.

It is possible that the disfavor with which many courts view unilateral arbitration clauses is more accurately tied to the inequity of providing an economically more powerful party with the additional advantage of choosing the forum it deems more likely to promote its goals in any given dispute. Most of the cases invalidating unilateral arbitration clauses involve employee or consumer contracts, where the doctrine of unconscionability has greater application than in the commercial context, and many of these cases conclude that these clauses both lack mutuality and are unconscionable.[12]

In this case, Maverick does not contend that the Arbitration Clause is unconscionable, only that it is illusory because Consigli provided no consideration for it. On this argument, the Court finds it likely that Maine's Law Court will agree with those courts that have found that, where a contract as a whole is otherwise

---

12 *See e.g. Showmethemoney Check Cashiers, Inc. v. Williams*, 27 S.W.3d 361, 366-7 (Ark. 2000) (invalidating an arbitration provision requiring customers to submit their disputes to arbitration but allowing check cashing entity to pursue collection against customers in court), superseded by statute as recognized in *Southeastern Stud & Components, Inc. v. American Eagle Design Build Studios, LLC*, 588 F.3d 963, 966 (8th Cir. 2009); *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 692 (Cal. 2000) (invalidating a unilateral requirement that employees arbitrate wrongful termination claims); *Iwen v. U.S. West Direct*, 977 P.2d 989 (Mont. 1999) (invalidating an arbitration provision requiring consumers to arbitrate all claims, while allowing a publisher to pursue collection against the consumers in court); *Arnold v. United Co. Lending Corp.*, 511 S.E.2d 854 (W. Va. 1998) (invalidating an arbitration agreement waiving the borrower's access to court, but preserving the lender's right thereto); s*ee also* Hans Smit, *The Unilateral Arbitration Clause: A Comparative Analysis*, 20 Am. Rev. Int'l Arb. 391, 400-408 (2009) (analyzing and rejecting the lack of consideration rationale for invalidating unilateral arbitration clauses but supporting the more limited unconscionability rationale for doing so); *accord Barrett v. McDonald Inv., Inc.,* 870 A.2d 146 (Me. 2005) (refusing to compel arbitration in an adhesion contract between parties with unequal bargaining power where the arbitration clause was considered ambiguous).

supported by consideration on both sides, a unilateral arbitration provision will not be found invalid for lack of consideration. *See Stenzel v. Dell, Inc.*, 870 A.2d 133, 143-44 (Me. 2005) (under Texas law unilateral arbitration clause was not unconscionable because the underlying contract was supported by adequate consideration). *See also e.g. Motsinger v. Lithia Rost-FT, Inc.*, 156 P.3d 156, 163-168 (Or. App. 2007) (reviewing cases and concluding that unilateral arbitration clauses are not *per se* invalid for lack of mutuality or consideration.)

B. Scope of the Arbitration Clause

Maverick also claims that approximately 90% of its claims involve overages arising out of delays occasioned by the Navy, and thus they do not fall within the scope of the Arbitration Clause. It points to pre-suit correspondence between the parties in which Consigli asserted that Maverick's claims for payment could not be addressed until Maverick separated its claims for overages from its claims for completed or partially completed work under the contract so that the overages could be referred to the Navy for review. The parties refer to Maverick's overage claims as "pass-through" claims because they are, at least according to Consigli, supposed to pass through Consigli to the Navy.

Whether, however, any of Maverick's claims pass through to the Navy is beside the point. Maverick's suit is against Consigli, not the Navy.[13] The Subcontract limits both the scope of Maverick's claims against Consigli and the

[13] The parties acknowledge that the Navy is not susceptible to suit in this matter, and Maverick notes that disputes with the Navy are governed by the Contract Disputes Act procedures, 41 U.S.C. §§ 601-613.

methods by which Maverick may assert these claims, but such limitations are not grounds for invalidating the Arbitration Clause.[14] Whatever claims Maverick has against Consigli "arise out of or relate to" the parties' Subcontract, and are therefore within the scope of the Arbitration Clause. "The existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *MSAD No. 68,* 222 F. Supp. 2d at 55.

The arbitrator will determine the validity and effect of any limiting provisions and will decide the value of any recovery against Consigli. If the arbitrator determines that certain of Maverick's claims are not arbitrable, the Subcontract suggests that the General Contract Documents contain a separate

---

[14] In addition to the Arbitration Clause, which purports to bind Maverick to determinations made with respect to its Subcontract through the general contract procedures, Article 10 of the Subcontract provides:

> The Subcontractor shall have no claim for extra or additional compensation or for any damage allegedly sustained or for any changes or modifications to its work unless it shall have first complied with all the applicable terms and provisions in the General Contract Documents pertaining to submission of claims, changes, modifications, and damages. The Subcontractor shall pay a proportionate share of all expenses including attorneys' fees incurred by the Contractor to prosecute Subcontractor claims. In no event shall the Contractor become or be liable to the Subcontractor on account of any such claims in excess of the amount actually received by the Contractor from the Owner on account of such claim.

Article 15 provides:

> Subcontractor shall only be entitled to receive from the Contractor the amount of compensation actually received by the Contractor from the Owner on account of any loss, costs, or damage to Subcontractor subject to any claims of the Contractor against the Subcontractor.

Article 16 (the Convenience Termination article) places additional substantive and procedural limitations on Maverick's payment claims against both Consigli and the Navy.

procedure for submission of claims against the Navy. *See* Contract Article 10. ("The Subcontractor shall have no claim for extra or additional compensation or for any damage allegedly sustained or for any changes or modifications to its work unless it shall have first complied with all the applicable terms and provisions in the General Contract Documents pertaining to submission of claims, changes, modifications, and damages.")

C. Staying Litigation Against FIC

Maverick asks the Court to refrain from staying its claim against Maverick's surety, FIC, because FIC has not agreed to be bound by the results of any arbitration between Maverick and Consigli. However, Consigli and FIC both assert that FIC's liability is coextensive with Consigli's liability. Defendants' Reply In Support of Motion to Compel Arbitration, p. 6 (Doc. # 20). The majority of federal courts that have held that an arbitration award binds a Miller Act surety. *See e.g. U.S. f/u/b/o WFI Georgia, Inc. v. Gray Ins. Co.*, 701 F. Supp. 2d 1320, 1327-29 (N.D. Ga. 2010) (discussing cases.)

Consigli has elected to arbitrate its dispute with Maverick and will be bound by the results of that arbitration. Judgment upon the award may be entered in this Court. The Court accepts FIC's representation that its liability is coextensive with Consigli's. Maverick will not need to relitigate its claims against FIC following arbitration with Consigli. It would be duplicative and risk inconsistent adjudications to allow Maverick to pursue its Miller Act claim against FIC in this Court simultaneously with its claims against Consigli in arbitration. *See U.S.*

*f/u/b/o Milestone Tarant, LLC v. Fed. Ins. Co.*, 672 F. Supp. 2d 92, 102 (D.D.C. 2009); *U.S. ex. rel. Tanner v. Davo Constr., Inc.,* 38 F. Supp. 2d 1299, 1306 (N.D. Okla. 1999). Finally, there is nothing in this record to indicate that the arbitration to which Maverick agreed would frustrate Maverick's Miller Act rights. *Cf. U.S. f/u/o Pensacola Const. Co. v. St. Paul Fire and Marine Ins. Co.*, 605 F. Supp. 306, 308-9 (W.D. La. 1988).

## IV. Conclusion

For the foregoing reasons, the Defendants' motion to stay this suit and compel arbitration is **GRANTED**.

It is further **ORDERED** that counsel file a status report every 6 months to inform the court about progress made regarding the pending arbitration.

**SO ORDERED**.

/s/ Nancy Torresen
United States District Judge

Dated this 5th day of June, 2012.